**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
DEBRA AUGUSTUS,                 )
                                )
               Plaintiff,       )
                                )
       v.                       )   Civil Action No. 09-1003 (EGS)
                                )
GARY LOCKE, Secretary,          )
U.S. Department of Commerce,    )
                                )
               Defendant.       )
                                )
_____)
```

## MEMORANDUM OPINION

Plaintiff, Debra Augustus, an employee of the Office of Facilities Management ("OFM") of the United States Department of Commerce ("DOC") brings this action against the DOC alleging discrimination on the basis of her sex and race and retaliation for complaining of her discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Defendant John E. Bryson, Secretary of Commerce, has filed a motion for summary judgment, essentially arguing that there are no material issues of fact and that judgment should be entered on behalf of defendant.  Upon consideration of the motion, the responses and replies thereto, the applicable law, the entire record, and for the reasons set forth below, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

I.    **Factual Allegations and Procedural Background**

A.    **Factual Background**[1]

Ms. Augustus is an African-American female who was hired as an Equipment Facilities Services Assistant in the OFM in June or July of 2004. *See* Am. Compl. ¶ 5, 6. Her rank is ZS-IV, which is the rough equivalent of a GS-8 rank. *See* Am. Compl. ¶ 6; Def.'s Statement of Material Facts Not in Dispute ("Def.'s SMF") ¶ 2. Her annual salary is approximately $52,000. Am. Compl. ¶ 6. During the relevant period, Patricia McNutt, Chief of the Office of Space and Building Management, was her direct supervisor. Def.'s SMF ¶ 4; Plaintiff's Statement of Material Facts in Dispute ("Plaintiff's SMF") ¶ 3. Ms. McNutt is a white female whose rank is ZA-IV. Def.'s SMF ¶ 4.

As an Equipment Facilities Services Assistant, it is part of Ms. Augustus' responsibilities to answer phone calls to the room reservations line and coordinate room reservations. *See* Def.'s SMF ¶ 24; Def.'s Motion for Summary Judgment ("MSJ") Ex. A., Deposition of Debra Augustus ("Augustus Dep.") at 75:18-20. Ms. Augustus is also responsible for providing conference room activity reports and keeping track of lobby and auditorium

---

[1]   Ms. Augustus filed a Statement of Material Facts in Dispute in support of her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, but does not specifically discuss or dispute a number of facts that Defendant asserts are not in dispute. *See* Def.'s Reply at 3-4. Because "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion," LCvR 7(h)(1), and because Plaintiff has not controverted these specific facts, the Court relies on the Defendant's Statement of Material Facts with respect to these issues.

reports.  Augustus Dep. at 80:13-17.  In addition, she provides administrative services, supports the staff, and is involved in evaluating data for finances.  *Id.* at 226:1-7.  In November 2007, Ms. Augustus received a pay increase based on her performance. Def.'s SMF ¶ 7.

### 1.   Assignment of COTR Duties and Proposed Pay Increase

On or about December 17, 2007, Ms. Augustus was assigned the duties of Contracting Officer Technical Representative ("COTR") for the cafeteria contract.  *See* Am. Compl. ¶ 7; Def.'s SMF ¶ 8; Plaintiff's SMF ¶ 10.  Her COTR responsibilities are "extensive" and include, *inter alia*, performing inspections twice daily, monitoring employees for health code compliance, inventory maintenance, data entry, processing employees and vendors, renewing DOC identifications, and modifying contracts.  Am. Compl. ¶ 9.  Ms. Augustus devotes approximately 45 to 50 percent of her time to her COTR duties.  *Id.* ¶ 10.  Ms. Augustus' COTR duties are collateral; she is expected to continue to perform her primary responsibilities in addition to her COTR responsibilities.  Am. Compl. ¶ 7; Def.'s SMF ¶ 9; Def.'s MSJ, Ex. 3, Interrogatory Responses of Debra Augustus at 5.  Ms. Augustus was aware that her new duties could be an opportunity for advancement, but she also knew that they did not guarantee a promotion or pay increase.  Def.'s SMF ¶¶ 8, 11; Augustus Dep. at

48-24-49:21, 54:1-8; *see also* Def.'s MSJ, Ex. B., Decl. of Kelly Spence ("Spence Decl.") ¶ 6.[2]

At some point after Ms. Augustus was made the COTR for the cafeteria contract, she discussed the possibility of a pay raise with her supervisor, Patricia McNutt.  Am. Compl. ¶ 11; Def.'s SMF ¶ 11; Augustus Inter. at 6.  To that end, in February 2008, Ms. McNutt and Doug Elznic, Plaintiff's second line supervisor, contacted Human Resources and were given two options:  (1) they could rewrite her position description and re-advertise the position so Ms. Augustus could compete for it; or (2) perform a desk audit.  Def.'s SMF ¶ 12.

Ms. Augustus alleges that while her supervisors were trying to find ways to promote her, a number of discriminatory events occurred.  During a conversation between Ms. McNutt and Mr. Elznic about a potential pay increase, Mr. Elznic purportedly questioned her ability to handle the position.  Am. Compl. ¶ 12; Plaintiff's SMF ¶ 16.  She also alleges that Fred Fanning, her third-line supervisor, was considering a suggestion by Ms. McNutt to re-advertise her position as a ZA-II position, but ultimately chose not to because she would likely have been promoted as a result.  Am. Compl. ¶ 13; Plaintiff's SMF ¶ 17.  Finally, at a

---

[2]    According to Ms. Augustus, the previous COTR for the cafeteria contract was a white male with a rank of GS-12, and the back-up COTR was a with male with a rank of GS-11.  Both earned salaries of approximately $75,000.  Am. Compl. ¶ 8.  However both had different positions with different job duties and neither was given a pay increase after being assigned COTR duties.  *See* Def.'s MSJ at 16; Def.'s MSJ, Ex. D, Decl. of Douglas Elznic ("Elznic Decl.") at 3-5.

meeting in February 2008 that she did not attend, Ms. Augustus alleges that Mr. Elznic's assistant suggested that she should not get a raise, and that Mr. Fanning purportedly told other managers that they should "cross all of [their] t's" because she was filing a "case against the department."  Am. Compl. ¶¶ 15, 16; Plaintiff's SMF ¶ 19.

## 2.   The Desk Audit and First EEO Complaint

On March 3, 2008, Mr. Elznic told Ms. Augustus he had requested a desk audit for her position.  Def.'s SMF ¶ 13; Augustus Dep,. at 58:16-23; Elznic Decl. at 5.  Dionne Jones, a Human Resources Specialist, conducted a desk audit of her position; Ms. Augustus' administrative and COTR responsibilities were considered as part of the desk audit.  Def.'s SMF ¶ 14; Augustus Dep. at 224:5-225:20; Def.'s MSG, Ex. G at 3.  On April 29, 2008, Ms. McNutt, who was not involved in performing the desk audit or the final decision, informed Ms. Augustus that the desk audit had been completed and that there was no resultant change in her grade level.  Def.'s SMF ¶ 15; Augustus Dep. at 159:10-13. The next day, Ms. Augustus was sent a final classification determination of her position pursuant to the desk audit.  Def.'s SMF ¶ 16.  According to the determination, her position title and classification were incorrect; however, the resulting reclassification would not result in a change in her grade or pay.  Def.'s SMF ¶ 16; Am. Compl. ¶ 17.  Ms. Augustus had the opportunity to appeal the decision to the Agency and the Office

of Personnel Management; however, she did not appeal.  Def.'s
MSJ, Ex. G at 1; Def.'s SMF ¶ 16; Augustus Dep. 223:6-19.

Ms. Augustus' position was officially reclassified from
Facility Management and Administrative Assistant, ZS-301-IV, to
Facilities Services Assistant, ZS-1603-IV on June 22, 2008.
Def.'s SMF ¶ 17.  Her position was at the full performance level,
which meant that she could not be promoted to a higher
classification without competing for another open position.  *Id.*;
Spence Decl. ¶¶ 2, 3.  After she did not receive a promotion as a
result of the desk audit, Ms. Augustus filed an EEO complaint on
June 23, 2008 (No. 08-51-00148), alleging discrimination on the
basis of her sex and race.  Am. Compl. ¶ 20; Plaintiff's Opp'n,
Ex. 1, Decl. of Debra Augustus ("Augustus Decl.") ¶ 24.  Ms.
McNutt was not named as the discriminating official in the
complaint.  Def.'s MSJ at 1, 6.

### 3.  Allegations of Retaliation

Ms. Augustus alleges that after she filed her EEO complaint,
Ms. McNutt began "retaliating against her by scrutinizing her
work and threatening" her, which caused her severe stress and
anxiety, and made her feel upset, uneasy, uncomfortable, and
intimidated.  Am. Compl. ¶ 21; Augustus Decl. ¶¶ 26, 28.  In
addition, beginning at this time Ms. McNutt also purportedly
singled her out by reminding her that she was on the pay for
performance program, and that her ability to secure promotions or
pay increases was tied to her performance.  Am. Compl. ¶ 22.

Despite this alleged retaliation, Ms. Augustus received a positive yearly review, a 3.3% performance pay increase, and a $2,000 bonus in November 2008.  Def.'s SMF ¶ 18.  And the following month, Ms. McNutt asked her to apply for a Management Analyst position that had recently been advertised because she could not be promoted in her current position.  Def.'s SMF ¶ 19. Shortly thereafter Larry Hess, Ms. Augustus' second line supervisor, met with her to inquire whether she submitted an application.  *Id.*; Augustus Dep. at 66:24-67:25, 220:12-24.  Ms. Augustus did not apply for the position.  Plaintiff's SMF ¶ 20.

On March 31, 2009, Ms. McNutt arrived at work and could not find Ms. Augustus.  None of her co-workers knew her whereabouts and Ms. Augustus did not have a two-way radio, which she usually carried, with her.  Def.'s SMF ¶ 24.  When Ms. Augustus returned to her desk, Ms. McNutt told her that she needed to be seated at her desk from 7:45 a.m. to 9:00 a.m. daily to answer room reservation calls, which was part of her primary responsibilities.  *Id.*  If she needed to leave her desk, she was instructed to leave a note on Ms. McNutt's office door.  *Id.*  Ms. Augustus contends that there were two other employees available to answer the phone, and that neither of these employees was required to leave a note before leaving their desk.  Am. Compl. ¶ 25.

The situation escalated on the morning of May 19, 2008.  Ms. Augustus was away from her desk attending to her COTR duties; she had not left a note for McNutt explaining where she was, as she

had been instructed to do on March 31, 2009.  Am. Compl. ¶ 29;
Def.'s SMF ¶ 29.   Though Ms. Augustus was often away from her
desk in the morning, she had only left a note "one or two times."
Augustus Dep. at 111:5-112:10.   That morning, Ms. McNutt
contacted Human Resources about Ms. Augustus' failure to leave a
note and was told that she could either place her on Absent
Without Official Leave ("AWOL") status or take a disciplinary
action, such as issuing a Letter of Warning or oral counseling.[3]
Def.'s SMF ¶ 30; Def.'s MSJ, Ex. C, Decl. Of April Lane ("Lane
Decl.") at 8.   Ms. McNutt chose the former and charged Ms.
Augustus with 45 minutes of AWOL (which equals approximately
$25).   Def.'s SMF ¶ 30; Plaintiff's SMF ¶ 41; Def.'s MSJ at 8.

     In addition to the foregoing, Ms. Augustus alleges a number
of other incidents with Ms. McNutt that purportedly made her life
more difficult.   These include:  (1) an e-mail in March or April
2009 to other employees asking if they wanted a larger workspace
that she was not included on because she already had a larger
workspace than other employees, Am. Compl. ¶ 28; Def.'s SMF ¶ 22;
(2) a March 26, 2009 threat to transfer her COTR duties to
another employee and re-assignment to an out-of-office detail,
Am. Compl. ¶ 24; (3) an April 1, 2009 meeting that Ms. McNutt
failed to inform her of, Am. Compl. ¶ 26; (4) an April 1, 2009
search of her cubicle when she was not present in an attempt to
harass and intimidate her, Plaintiff's SMF ¶ 48; (5) a comment to

---

[3]     AWOL is not a disciplinary action, but rather an issue of
pay.  *See* Lane Decl. at 8.

another employee that Ms. Augustus "thinks she knows everything," Am. Compl. ¶ 27; and (6) a comment to Plaintiff that the reason she had not received a raise was because management has the impression that she gossips, Plaintiff's SMF ¶ 41.

Ms. Augustus filed a second EEO complaint alleging a hostile work environment and retaliation on June 15, 2009 (No. 09-51-00510).[4]  Am. Compl. ¶ 30.

**B.   Procedural History**

Plaintiff filed a complaint in this Court on May 29, 2009, alleging discrimination on the basis of sex and race and retaliation.  Defendant filed a motion to dismiss, or in the alternative, for summary judgment on August 24, 2009 based on Ms. Augustus' failure to exhaust, which this Court granted in part and denied in part.  *See Augustus v. Locke*, 699 F. Supp. 2d 65 (D.D.C. 2010).  The Court found that allegations relating to Agency Complaint No. 08-51-00148 had been properly exhausted because Ms. Augustus cooperated with the EEO investigation, withdrew her complaint, and filed suit more than 180 days after she withdrew from the administrative proceeding.  *Id.* at 71-72.  The Court held that Ms. Augustus' allegations relating to Agency Complaint No. 09-51-00510 had not been properly exhausted at the time she filed suit, because the Agency had yet to take final

---

[4]   On March 30, 2010, Ms. Augustus filed a third agency complaint (No. 10-51-00191) alleging disparate treatment and a hostile work environment in retaliation for prior EEO activity. Although exhausted at the Agency level, Ms. Augustus did not raise these claims in her complaint or amended complaint.  In fact, she raises them for the first time in her Opposition. These claims are discussed in Section IV-C *infra*.

action.  *Id.* 72-73.  Plaintiff then properly exhausted those claims and filed an Amended Complaint on August 18, 2010.

## III. Standard of Review

Summary judgment is appropriate in situations where the moving party has shown that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  That a factual dispute exists is not sufficient to bar summary judgment, rather, the dispute must be regarding a "material fact."  *See* Fed. R. Civ. P. 56(a).  For the purposes of summary judgment, "[a] fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  Moreover, the factual dispute must be "genuine," such that there is sufficient admissible evidence for a reasonable trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 255.  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *See Celotex*, 477 U.S. at 323.

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials; rather, it

must be supported by affidavits, deposition testimony, documentary evidence, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1); Celotex, 477 U.S. at 324. "[A]lthough summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [her] obligation to support [her] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Adair v. Solis*, 742 F. Supp. 2d 40, 50 (D.D.C. 2010) (*aff'd* 473 F. App'x 1 (D.C. Cir. 2012)) (internal quotation marks and citations omitted). Indeed, the "mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

In determining whether there is a genuine issue of material fact, the Court must view all facts in the light most favorable to the non-moving party, *see Matsushita Elec. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004), and draw all justifiable inferences in favor of the non-moving party, *see Anderson*, 477 U.S. at 255. At bottom, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

at 251-252.  As a result, the non-moving party must "do more than
simply show that there is some metaphysical doubt as to the
material facts." *Matsushita*, 475 U.S. at 586.  "If the evidence
is merely colorable, or is not sufficiently probative," summary
judgment is warranted.  *Anderson*, 477 U.S. at 249-50 (internal
quotation marks and citations omitted).

## IV.  Discussion

In the absence of any direct evidence of discrimination, Ms.
Augustus' Title VII claims are evaluated pursuant to the
burden-shifting framework articulated in *McDonnell Douglas Corp.
v. Green*, 411 U.S. 792 (1973).  First, the plaintiff must
establish a prima facie case of discrimination or retaliation by
a preponderance of the evidence.  The burden then shifts to the
defendant to articulate a "legitimate, nondiscriminatory reason"
for the allegedly discriminatory or retaliatory employment
conduct.  *See McDonnell Douglas*, 411 U.S. at 802-804; *Wiley v.
Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).  The defendant
"need not persuade the court that it was actually motivated by
the proffered reasons.  It is sufficient if the defendant's
evidence raises a genuine issue of fact as to whether it
discriminated against the plaintiff."  *Tex. Dep't of Cmty.
Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal citations
and quotation marks omitted).  Finally, a plaintiff "must be
afforded the opportunity to prove" that the defendant's proffered
nondiscriminatory reason for the alleged actions "was not its

true reason, but was a pretext for discrimination." *Barnette v. Chertoff*, 453 F.3d 513, 516 (D.C. Cir. 2006) (internal quotation marks omitted).  At all times, the burden of persuasion remains with the plaintiff.  *Burdine*, 450 U.S. at 253.

Title VII makes it unlawful for an employer to "fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (2006).  In order to establish unlawful discrimination, Ms. Augustus must show that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Wiley*, 511 F.3d at 155. To qualify as an adverse employment action, an "employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a responsible trier of fact could find objectively tangible harm."  *Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009).

Under Title VII, an employer is also prohibited from discriminating against an employee who has opposed a practice proscribed by Title VII or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [subchapter]." 42 U.S.C. § 2000e-3(a) (2006).  In order to state a prima facie

case of retaliation, Augustus must show that "(1) [s]he engaged in statutorily protected activity; (2) that [s]he suffered a material adverse action by [her] employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). "[A] 'materially adverse' action for purposes of a retaliation claim is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

At the summary judgment stage, once the defendant has offered a legitimate, non-discriminatory reason for the alleged adverse employment action, "the district court need not -- *and should not* -- decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, the sole inquiry before the Court becomes whether the plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason that the employer intentionally discriminated against the [plaintiff] on [a prohibited basis]." *Id.*; *see also Jones*, 557 F.3d at 678. Essentially, the McDonnell Douglas burden-shifting analysis is no longer applied and the only remaining issue is whether the employer discriminated against the plaintiff. However, "the Court still first must determine

whether plaintiff has suffered an adverse employment action."
*Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009) (citing
*Brady*, 520 F.3d at 494).

In seeking summary judgment, Defendant principally attacks
Ms. Augustus' ability to establish a prima facie case.
Specifically, Defendant argues that most of her allegations do
not amount to an adverse employment action, and that even those
that could arguably be construed as an employment action of any
kind are simply not the types of adverse action that are
actionable under Title VII.  According to the Defendant, this is
fatal to plaintiff's claims of disparate treatment and
retaliation.  *See* Def.'s MSJ at 13-17, 21-22.

### A.   First EEO Complaint

In her first EEO complaint, Ms. Augustus alleged:  (1)
failure to promote or increase pay after being assigned the
duties of COTR for the cafeteria contract; (2) Mr. Elznic's
questioning of her ability to handle the COTR position in early
2008; (3) Mr. Fanning's decision not to re-advertise her
position; and (4) the failure of Human Resources to properly
consider her COTR duties in her March 2008 desk audit.
Essentially, these allegations amount to a claim for failure to
promote.

The Court finds that Ms. Augustus has established that she
suffered an adverse employment action when she was not promoted
after being assigned COTR duties.  "An 'adverse employment
action' within the meaning of *McDonnell Douglas* is 'a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).   A failure to promote constitutes an adverse employment action even in situations where "any alleged harm is speculative." *Douglas*, 559 F.3d at 553.   Moreover, in this Circuit, a decision not to competitively advertise a position is an adverse employment action, regardless of whether Ms. Augustus "would have received the position but for the discrimination." *Id.* at 552 (citing *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)).

Defendant asserts that Ms. Augustus was not promoted because COTR duties are "collateral" and that the assignment of these duties did not result in a significant change in her employment status because she continued to receive pay increases in the following years.  *See* Def.'s MSJ at 16.   Moreover, Defendant notes that at the time Ms. Augustus accepted the assignment of COTR duties, she knew that a pay raise or promotion was not guaranteed.   There were only two ways she could receive a promotion -- she could compete for her position if it was re-advertised or a desk audit could be conducted to see if a promotion was warranted based on her job duties.  *Id.* at 5; Augustus Dep. at 42:4-46:23.   Though Ms. Augustus' position was not re-advertised, a desk audit in March 2008 established that

her position was incorrectly classified though her grade and pay were correct.[5]  *See* Def.'s MSJ at 5-6; 16-17.  Nothing in the record suggests that there was anything improper or discriminatory about the way that this desk audit was conducted, and despite Ms. Augustus' contrary allegations, her COTR duties were considered in determining her whether her position classification was correct.  *See* Augustus Dep. at 224:5-225:20.

The Court finds that Defendant has proffered legitimate, non-discriminatory reasons as to why Ms. Augustus was not promoted.  *See Montgomery v. Chao*, 495 F. Supp. 2d 2, 12-13 (D.D.C. 2007) (*aff'd* 546 F.3d 703 (D.C. Cir. 2008)) (finding that defendant had proffered a legitimate, non-discriminatory reason for failure to promote after plaintiff's accretion of COTR duties because the results of a desk audit confirmed that plaintiff's position was properly classified); *see also Brookens v. Solis*, 616 F. Supp. 2d 81, 93-94 (D.D.C. 2009) (concluding that defendant had met its burden of producing a legitimate, non-discriminatory reason for selection of one applicant over another by showing that the plaintiff did not have the appropriate qualifications for the job).  Moreover, as the Defendant points out, Ms. Augustus received pay increases and merit bonuses while allegedly being denied a promotion. *See* Def.'s MSJ at 25.  Accordingly, Ms. Augustus now bears the burden of showing that "a reasonable jury could conclude from all of the

---

[5]   Plaintiff's position changed from ZS-301-IV to ZS-1603-IV; she was still in the ZS-IV grade.  *See* Def.'s SMF  16, 17.

evidence that the adverse employment decision was made for a discriminatory reason." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

A plaintiff can establish an inference of discrimination "by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).  To that end, Ms. Augustus contends that both of her predecessors in the role of COTR for the cafeteria contract were white men who were ranked higher and paid more.  *See* Am. Compl. ¶ 8; Plaintiff's Opp'n at 20.  However, in order to establish that her predecessors were similarly situated, Ms. Augustus must show that "all of the relevant aspects of her employment situation were nearly identical" to theirs.  *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (internal quotation marks omitted); *Smith v. Jackson*, 539 F. Supp. 2d 116, 135 (D.D.C. 2008).  The Court finds that Ms. Augustus has failed to do that here.  The evidence presented by Defendant establishes that both of these men "held different positions with different job duties" than Ms. Augustus, and that neither of them were "given a pay increase after being assigned COTR duties."  Def.'s MSJ at 18; Elznic Decl. at 3-5.  The fact that both of her predecessors had different classifications, salaries, and job descriptions at the time they were given COTR responsibilities for the cafeteria contract defeats Ms. Augustus' argument that

they were similarly situated.  *See Barbour v. Browner*, 181 F.3d
1342, 1345-46 (D.C. Cir. 1999) (finding that two EPA employees
with different ranks were not similarly situated even though some
of their responsibilities were overlapping); *Montgomery v. Chou*,
546 F.3d 703, 707 (D.C. Cir. 2008) (deciding that employees who
did not have the same position as plaintiff and who did not
receive promotions on the basis of assignment of COTR duties were
not similarly situated to plaintiff); *Bennett v. Solis*, 729 F.
Supp. 2d 54, 62 (D.D.C. 2010) (concluding that plaintiff was not
similarly situated to a comparator employee who had a different
rank, even though they had been subjected to similar treatment).
Absent some evidence that other employees with her classification
and salary received a promotion or pay increase solely on the
basis of assignment of COTR duties, no reasonable jury could
conclude that Ms. Augustus' non-promotion was the result of
unlawful discrimination.[6]  *See Bundy v. Jackson*, 641 F.2d 934,
951 (D.C. Cir. 1981) (holding that where a plaintiff alleges that

---

[6]   A plaintiff can also demonstrate pretext by offering
"evidence of discriminatory statements or attitudes on the part
of the employer."  *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284,
1289 (D.C. Cir. 1998).  Ms. Augustus attempts to do so by
asserting that Ms. McNutt told her that Mr. Fanning decided not
to re-advertise her position because he found out that she would
likely receive a promotion as a result.  *See* Am. Compl. ¶ 13.
The only support Ms. Augustus offers for this allegation is her
own declaration.  *See* Augustus Decl. ¶ 17.  Defendant has
countered this allegation by showing that re-advertising her
position was but one method by which Ms. Augustus could receive a
promotion or pay increase.  *See* Def.'s MSJ at 5.  This sort of
conclusory, unsupported allegation is not sufficient to create a
material issue of fact.  *See Short v. Chertoff*, 555 F. Supp. 2d
166, 173 (D.D.C. 2008) ("Mere speculation that discriminatory
animus motivated the defendant's decision does not create a
genuine issue of fact for the jury").

she was denied an increase in pay and grade, the relevant inquiry is whether a similarly-situated person outside the plaintiff's protected class requested and received the same kind of promotion or increase under similar circumstances).

**B.   Second EEO Complaint**

In her second EEO complaint, Ms. Augustus alleged that she suffered from discrimination and retaliation for filing of her first EEO complaint. Ms. Augustus alleges generally that after she filed her complaint, Ms. McNutt began to question her duties daily and regularly reminded her that she was on the pay for performance plan.  She also alleges the following specific instances of discrimination or retaliation, all involving Ms. McNutt:  (1) a March 2009 threat to give her COTR duties to another employee; (2) a March 2009 instruction to be seated at her desk every morning from 7:45 a.m. to 9:00 a.m. and to leave a note on Ms. McNutt's door if she needed to leave for any reason; (3) an April 2009 meeting that Ms. McNutt failed to inform her of; (4) an April 2009 refusal to allow her to move to a larger workspace; and (5) a charge of 45 minutes of AWOL time in May 2009 for being away from her desk and failing to leave a note.

Defendant challenges several of these allegedly discriminatory acts on the grounds that they are not sufficiently adverse under governing law for disparate treatment or retaliation.  Of these, the only action that Defendant concedes could arguably be construed as "materially adverse" for the purposes of Title VII is the 45 minutes of AWOL that Ms. Augustus

was charged with in May 2009.  *See* Def.'s MJS at 15.  The Court
agrees that Ms. Augustus has not made the requisite showing with
respect to most of the challenged actions, and that these
allegedly discriminatory actions did not cause a "significant
change in employment status" or "materially adverse consequences
affecting the terms, conditions, or privileges of employment."
*Douglas*, 559 F.3d at 552 (internal quotation marks omitted).
This is true even with respect to those allegations that Ms.
Augustus has raised to support her retaliation claim, for which
"the concept of an adverse employment action is somewhat
broader."  *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir.
2011).  The purportedly discriminatory incidents Ms. Augustus
alleges are simply not of the type that would "dissuade a
reasonable worker from making or supporting a charge of
discrimination."  *Gaujacq*, 601 F.3d at 577 (quoting *Burlington
Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57
(2006)).

Where, as here, a plaintiff asks the Court to find
discrimination on the basis of "employment actions that do not
obviously result in a significant change in employment status,"
the plaintiff "must go the further step of demonstrating how the
decision nonetheless caused an objectively tangible harm."
*Douglas*, 559 F.3d at 553.  Ms. Augustus has alleged that she
suffered from stress and anxiety as a result of the
discrimination and retaliation she was subjected to; however,
such "purely subjective injuries" are not sufficient to establish

an adverse employment action for the purposes of Title VII.  *See*
*Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002)
(describing dissatisfaction, humiliation, and loss of reputation
as subjective injuries that do not amount to adverse employment
actions).  Moreover, as the Defendant has indicated, the only
employment actions Ms. Augustus experienced during the entire
period that she was purportedly subject to disparate treatment
and retaliation were positive performance reviews and pay for
performance pay increases and one 45 minute AWOL charge.  *See*
Def.'s MSJ at 25 (noting that plaintiff received pay for
performance increases and bonuses in 2008, 2009, and 2010).

    In addition to her failure to allege tangible harm, none of
Ms. Augustus' allegations amount to an adverse employment action
for the purposes of discrimination or retaliation.  Ms. Augustus'
allegations that Ms. McNutt began to question her COTR duties and
remind her that she was on the pay for performance plan did not
affect the terms or conditions of her employment.  *See Bryant v.*
*Brownlee*, 265 F. Supp. 2d 52, 61 (D.D.C. 2003) ("plaintiff's
allegations . . . that her performance was criticized do not rise
to the level of [an] adverse employment action[]" for the
purposes of Title VII discrimination); *Hunter v. Clinton*, 653 F.
Supp. 2d 115, 122-123 (D.D.C. 2009) (finding that plaintiff's
complaints of increased scrutiny were not an adverse employment
action for the purposes of discrimination or retaliation and
noting that these allegations were akin to a poor performance
evaluation).  Nor are Ms. Augustus' allegations that Ms. McNutt

threatened her after she filed her first EEO complaint of the type that would "dissuade a reasonable employee" from bringing a charge of discrimination.  In the absence of any evidence of the specific threats that she received, Ms. Augustus' vague allegations that she was threatened are insufficient to meet her burden of proving a prima facie case.  Relying on Supreme Court precedent, the D.C. Circuit held in *Baloch v. Kempthorne* that precisely this kind of treatment, consisting of "job-related" criticism and "sporadic verbal altercations or disagreements," does not rise to the level of an adverse employment action in the retaliation context.  550 F.3d 1191, 1199 (D.C. Cir. 2008). Similarly, the fact that Ms. Augustus was required to sit at her desk from 7:45 a.m. to 9:00 a.m. every morning does not constitute an adverse employment action.  *See Baloch*, 550 F.3d at 1198 (concluding that a requirement that a physician certify the health problem and date of treatment each time plaintiff submitted a request for sick leave was not materially adverse). While the Court does not doubt that Ms. Augustus experienced stress and anxiety as a result of these alleged incidents, in the absence of an adverse employment action, Title VII does not establish "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

The only allegation that Ms. Augustus made in her second EEO complaint that could arguably be construed as an adverse employment action is that she was charged with 45 minutes of AWOL

in May 2009 for being away from her desk before 9:00 a.m.  As a result of the AWOL charge, Ms. Augustus lost approximately $25.  See Def.'s Reply at 6.  However, even with her strongest allegation, Ms. Augustus has alleged a mere trivial harm, not an adverse employment action, and certainly not the kind of action that requires action by this Court.  *See Harper v. Potter*, 456 F. Supp. 2d 25, 29 (D.D.C. 2006) (holding that a seven day suspension, while disciplinary in nature, was not an adverse employment action because plaintiff was able to return to the same job with the same pay status); *Douglas-Slade v. Lahood*, 793 F. Supp. 2d 82, 99 (D.D.C. 2011) (finding that "placement on AWOL status for one day cannot sustain plaintiff's retaliation claim").

Even if the Court were to find that the 45 minutes of AWOL constituted an adverse employment action, the defendant has proffered a legitimate, non-discriminatory reason for Ms. McNutt's disciplinary action.  According to Agency policy, employees are responsible for following directives from supervisors, and are not to disregard them.  *See* Def.'s SMF ¶ 25; Lane Decl. at 4.  Ms. Augustus did exactly that when she was away from her desk and did not leave a note on the morning of May 19, 2009, and she was charged with AWOL only after Ms. McNutt consulted with Human Resources.  *See* Augustus Dep. 75:18-76:21; Def.'s SMF  26.  Ms. Augustus has not offered any evidence to show that these legitimate, non-discriminatory reason were pretextual.

In addition to the insufficient evidence of retaliation, the passage of time between the filing of her administrative charge and the first allegedly retaliatory action undermines any causal link between the two.  In this Circuit, "temporal proximity can indeed support an inference of causation, but only where the two events are very close in time."  *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)).  Here, Ms. Augustus filed her first administrative complaint in June 2008 at which time Ms. McNutt became aware of her EEO activity.  The first allegedly retaliatory action was in March 2009, a gap of nine months.[7]  *See* Am. Compl. ¶¶ 20, 24.  While there exists no bright-line rule as to the amount of time that is sufficient to prove a causal link, the Court finds that nine months, especially under the circumstances alleged, is too lengthy to establish an inference of causation.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases in which three and four month intervals were not sufficient to establish causation); *compare Stone-Clark v. Blackhawk, Inc.*, 460 F. Supp. 2d 91, 97-98 (D.D.C. 2006) (finding that a one month interval between plaintiff's protected activity and the alleged retaliation was sufficient to give rise to an inference of causation).

---

[7]     Because Ms. Augustus did not exhaust the claims from her third administrative charge, filed in 2010, the Court will not consider the allegedly retaliatory actions that occurred after the filing of her second administrative charge in June 2009.  *See* Section IV-C *infra*.

C.    **Failure to Exhaust**

Ms. Augustus has raised several new allegations for the first time in her opposition to defendant's motion for summary judgment. Most of these allegations relate to Ms. Augustus' responsibilities as the COTR for the cafeteria contract. First, Ms. Augustus alleges that on June 2, 2009, October 30, 2009 and March 29, 2010, Ms. McNutt scheduled and attended meetings relevant to the cafeteria contract without her. *See* Plaintiff's SMF ¶¶ 29, 30, 34. The following month, Ms. Augustus alleges that Ms. McNutt refused her request for chef shoes to use while she was working in the cafeteria. *Id.* ¶¶ 36, 37. After a fall in the cafeteria on August 12, 2009, her second line supervisor approved the request. *Id.* ¶ 38. On October 5, 2009, Ms. McNutt purportedly instructed Ms. Augustus to stop inspecting food and taking food temperatures, both of which were an integral part of her COTR duties. *Id.* ¶¶ 21, 22. A few weeks later, on October 30, 2009, Ms. McNutt showed the Contracting Officer for the cafeteria contract Plaintiff's position description and subsequently restricted Ms. Augustus' ability to inspect food. *Id.* ¶¶ 25, 26; Plaintiff's Opposition Ex. 3, Decl. of Kathleen McGrath ("McGrath Decl.") at 3. Finally, on May 21, 2010, Ms. McNutt e-mailed the Contracting Officer regarding the equipment fund for the cafeteria. Plaintiff's SMF ¶ 33. All of this was contrary to the rules governing the cafeteria contract. McGrath Decl. at 3-4. In addition to these allegations regarding her

responsibilities, Ms. Augustus alleges that Ms. McNutt retaliated against her during the evaluation process.   Plaintiff's SMF ¶¶ 62, 63.   In her Opposition, Ms. Augustus argues that these allegations support her hostile work environment claim.

Under Title VII, a plaintiff "must timely exhaust [her] administrative remedies before bringing [her] claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation marks and citations omitted); 42 U.S.C. § 2000e-16(c). A complainant claims are deemed exhausted for the purposes of bringing suit in a district court "within 90 days of receipt of the final action . . . if no appeal has been filed" or "after 180 days from the date of . . . if an appeal has not been filed and a final action has not been taken."   29 C.F.R. § 1604.407(a)-(b).

A final agency decision on Ms. Augustus' third complaint was issued in November 2011.   *See* Def.'s Reply at 15.   Ms. Augustus did not amend her complaint in September 2010, after 180 days had passed from the filing of her third agency complaint with no action, and did not seek judicial review of these claims within 90 days of the final agency decision.   *See* Def.'s Reply at 15. Instead, she raises them here for the first time.   Other courts in this District have applied Title VII's filing requirements strictly, and have dismissed suits "for missing the deadline by even one day."   *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006); *see also Smith v. Dalton*, 971 F. Supp. 1, 3-4 (D.D.C. 1997) (dismissing a suit for filing a complaint 91 days after

final agency decision); *Bass v. Bair*, 514 F. Supp. 2d 96, 99 (D.D.C. 2007) (two days late).

However, the 90 day window operates like a statute of limitations, not a jurisdictional bar and is therefore "subject to waiver, estoppel, and equitable tolling" in "extraordinary and carefully circumscribed circumstances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1054-57 (D.C. Cir. 1988). No such basis exists here, especially because Ms. Augustus was well aware of the exhaustion requirements as a result of the dismissal without prejudice of her retaliation claim for failing to properly exhaust that claim. *See Augustus v. Locke*, 699 F. Supp. 2d 65 (D.D.C. 2010). Indeed, she filed her third agency complaint after this Court instructed her of her obligations to exhaust her administrative remedies. The Court therefore grants summary judgment with prejudice with respect to these claims because plaintiff is now time-barred from raising them in an amended complaint or in a new action.

**D.   Hostile Work Environment**

Plaintiff does not explicitly raise a claim of hostile work environment in her amended complaint. However, because some of her allegations could be interpreted as raising a claim for a hostile work environment, Defendant argues that her claims, if raised, would fail. A workplace is actionably hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions

of the victim's employment and create an abusive working environment." *Oncale*, 523 U.S. at 78 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

To establish a claim of a hostile work environment, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred as a result of plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question but nonetheless failed to take steps to prevent the harassment or afford plaintiff prompt remedial action. *See Jones v. GlaxoSmithKline, LLC*, 755 F. Supp. 2d 138, 149 (D.D.C. 2010). In making a determination, the Court must consider the totality of circumstances, including the frequency, severity, and offensiveness of the alleged discriminatory conduct, and whether such alleged conduct interfered with the plaintiff's work. *Baloch*, 550 F.3d at 1201. If the working environment alleges is not one that a "reasonable person would find hostile or abusive" then it is "beyond Title VII's purview." *Oncale*, 523 U.S. at 81 (quoting *Harris*, 510 U.S. at 21).

As far as the Court can discern, Ms. Augustus cites to the allegations she made in support of her discrimination and retaliation claims to support her hostile work environment claim. *See* Plaintiff's Opp'n at 22. Moreover, she alleges that all of the claims that she raised in her third agency complaint

establish a hostile work environment.  *See* Plaintiff's Opp'n at
22.  While Ms. Augustus did raise a claim of a hostile work
environment in her third agency complaint, because those claims
were not properly exhausted, she cannot rely on those allegations
now in trying to establish that she suffered a hostile work
environment.  *See* Section IV-C *supra*.

     None of Ms. Augustus' properly exhausted allegations are of
the type that can support a claim for a hostile work environment.
*See Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("a
few isolated incidents of offensive conduct do not amount to
actionable harassment"); *Singh v. U.S. House of Representatives*,
300 F. Supp. 2d 48, 54-57 (D.D.C. 2004) (finding that plaintiff
had not established a hostile work environment where she had
alleged that her employer humiliated her at meetings, screamed at
her, told her to "shut up and sit down," and treated her in a
hyper-critical manner, even though the treatment may have been
disrespectful and unfair).  Ms. Augustus' allegations regarding
the requirements that she be at her desk in the morning and that
she was not allowed to move to a larger workspace similarly fail
because "complaints over undesirable job responsibilities and
office arrangements do not support a hostile work environment."
*Hussain v. Gutierrez*, 593 F. Supp. 2d 1, 7 (D.D.C. 2008).

     In light of the demanding standard for establishing a
hostile work environment, the Court finds that Ms. Augustus has
failed to meet it.  Ms. Augustus has alleged a handful of events
that purportedly occurred over a year-long period.  At most, Ms.

Augustus' allegations amount to the "ordinary tribulations of the workplace," which is not the type of claim that Title VII was intended to remedy.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Rhone v. United States Capital Police*, 865 F. Supp. 2d 65, 71-72 (D.D.C. 2012).  Indeed, as Plaintiff's own record reflects, the working environment may have been frustrating and dysfunctional, but this was equally true for plaintiff as it was for her coworkers.  *See* Plaintiff's Opp'n Ex. 2  at 2-3; Plaintiff's Opp'n Ex. 5 at 2; Plaintiff's Opp'n Ex. 6 at 3-5.  Therefore, the Court grants summary judgment to the extent that Ms. Augustus has raised a claim of hostile work environment.

## V.   Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary judgment.  An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     EMMET G. SULLIVAN**
**            UNITES STATES DISTRICT JUDGE**
**            March 30, 2013**